UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

STEVEN D. COZAD AND                              CIV. NO. 12-32 (DWF/JSM)
LYNN M. COZAD

      Plaintiffs,

v.                                                      REPORT AND RECOMMENDATION

LITTON LOAN SERVICING, LP,
POPULAR FINANCIALSERVICES, LLC,
OCWEN FINANCIAL CORPORATION,
THE BANK OF NEW YORK MELLON F/K/A
THE BANKOF NEW YORK AS TRUSTEE
FOR THE BENEFIT OF CERTIFICATE
HOLDERS OF POPULAR ABS, INC. MORTGAGE
PASS THROUGH CERTIFICATES SERIES 2006-E,
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.,
WASHINGTON COUNTY SHERIFF DEPARTMENT,
WILFORD AND GESKE,

      Defendants.


This matter is before the Court on defendants Litton Loan Servicing, LP, Ocwen

Loan Servicing, LLC, The Bank of New York Mellon f/k/a The Bank of New York, as

Trustee, Mortgage Electronic Registration Systems, Inc. and Wilford, Geske & Cook,

P.A.'s Motion to Dismiss [Docket No. 21] and defendant Washington County Sheriff

Department's Amended Motion to Dismiss [Docket No. 30].  Plaintiffs appeared pro se.

Orin J Kipp, Esq. appeared on behalf of defendants Litton Loan Servicing, LP, Ocwen

Loan Servicing, LLC, The Bank of New York Mellon f/k/a The Bank of New York, as

Trustee, Mortgage Electronic Registration Systems, Inc. and Wilford, Geske & Cook,

P.A.   Richard Hodsdon, Esq. appeared on behalf of defendant Washington County

Sherriff's Department.

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

## I.     BACKGROUND

### A.     Procedural History

On or about September 25, 2006, plaintiffs executed a promissory note in favor of defendant Popular Financial, LLC for the principal amount of $360,000.00 related to plaintiffs' property. <u>See</u> Affidavit of Orin J. Kipp [Docket No. 12] ("Kipp Aff.") Ex. 1.[1]  In order to secure this debt, plaintiffs executed and delivered a mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Popular Financial Services, LLC, which was recorded with the Washington County Recorder on October 30, 2006 as Document No. 3613464. <u>Id.</u>, ¶ 4, Ex. 2.

---

[1]     The Court may take judicial notice of public records and consider them on a motion to dismiss without converting the motion to one for summary judgment.  <u>See</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 269, n. 1 (1986) (the court is "not precluded in [its] review of the complaint from taking notice of matters of public record."); <u>Levy v. Ohl</u>, 477 F.3d 988, 991 (8th Cir. 2007) (in this Circuit, Rule 12(b)(6) motions are not converted into motions for summary judgment simply because one party submits additional matters in support of or opposition to the motion. . . Some materials that are part of the public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6)); <u>Stahl v. United States Dep't of Agric.</u>, 327 F.3d 697, 700 (8th Cir. 2003) ("the district court may take judicial notice of public records and may thus consider them on a motion to dismiss.").   In addition, the Court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." <u>Parnes v. Gateway 2000, Inc.</u>, 122 F.3d 539, 546 (8th Cir. 1997) (citing and quoting <u>In re Donald Trump Casino Sec. Litig.</u>, 7 F.3d 357, 368 n.9 (3d Cir. 1993)).

Consistent with these principles, this Court has considered the following documents submitted by defendants:  plaintiffs' promissory note and mortgage; the recorded assignment of the mortgage; the power of attorney documents; and the recorded Sheriff's Certificate of Sale and Foreclosure Record.

Plaintiffs' mortgage was subsequently assigned by an Assignment of Mortgage by MERS to defendant The Bank of New York Mellon f/k/a The Bank of New York, as Trustee, for the benefit of Certificate Holders of Popular ABS, Inc. Mortgage Pass Through Certificate Series 2006-E ("BONY"), which was recorded with the Washington County Recorder on May 16, 2011 as Document No. 3841197. Id. at Ex. 3.

In the name of BONY, defendant Wilford & Geske received from Litton Loan Servicing LP ("Litton"), the duly authorized servicer of the mortgage for BONY, the power of attorney to foreclose plaintiffs' mortgage by advertisement. Id., Exs. 4, 5. The Power of Attorney to Foreclose Mortgage as well as a Limited Power of Attorney were recorded with the Washington County Recorder on June 22, 2011, as Document Nos. 3845446 and 3845447, respectively. Id.

Thereafter, Wilford & Geske caused a Notice of Mortgage Foreclosure Sale to be published for the property at issue. Id., Ex. 6. On July 1, 2011, the Washington County Sheriff conducted a public auction for the foreclosure sale of the property and the property was sold to BONY. Id.

## B.   Amended Complaint

Plaintiffs initiated this case on January 5, 2012. See Complaint [Docket No. 1]. The initial Complaint against defendants alleged that the non-judicial sheriff's sale of their property, following the foreclosure of the property, should be voided on the basis that defendants failed to show the existence of the promissory note, their signatures or copies of the note to establish that defendants are the owners or holders of such a note; defendant Wilford & Geske, as a debt collector, violated 15 U.S.C. § 1962(e) by making false and misleading representations in connection with the collection of an alleged

debt; and defendants violated the Minnesota commercial code and the Uniform Commercial Code. Id., pp. 4-7.

Defendants subsequently moved to dismiss the Complaint. See Docket Nos. 5, 9.

On February 29, 2012, plaintiff filed an Amended Complaint. See Docket No. 18. The facts as alleged in plaintiffs' Amended Complaint are as follows:

Plaintiffs refinanced their home on or about November 2006 at an interest rate of 8.36% for a period of twenty-four months. Id., p. 1. The balance of the loan was $360,000, with a monthly payment of $2,735.45. Id., pp. 1-2. It was plaintiffs' understanding that they would need to refinance again after the twenty-four month period had expired in order to obtain a fixed rate. Id.. p. 2.

Plaintiffs fell behind on their mortgage payments, but were able to bring the mortgage up to date. Id. Due to an illness and a bad economy in 2009, plaintiffs struggled to maintain their payments and contacted an unnamed defendant for a modification or restructuring of their mortgage in order to remain in good standing with their mortgage company. Id. Defendants agreed to a trial payment plan of $1,542.92 per month for six months and plaintiffs accepted this plan. Id. Plaintiffs complied and made every payment on a timely basis. Id. After the six-month period, defendants contacted plaintiffs to extend the trial period by an additional six months, while plaintiffs submitted the necessary documentation for a mortgage modification. Id. The agreement was that plaintiffs were required to continue making payments of $1,542.92 per month and to submit all requested documents necessary for a modification. Id. After another six months passed, defendants informed plaintiffs that they were denied a

modification via HAMP,[2] but that there was an additional program for which plaintiffs might qualify. Id. Plaintiffs were instructed to continue making payments in the amount of $1,542.92 per month. Id. An additional six months passed and defendants made continuing requests for documentation to determine if plaintiffs qualified for a second modification program. Id.

After several months passed, defendants notified plaintiffs that they did not qualify for a loan modification because "they were .5% under the requirement to qualify for the program." Id. Plaintiffs then notified defendants of the money they received from using the house to care for mentally disabled adults, which was a reimbursement for monthly expenses incurred and not income. Id. Defendants requested that plaintiffs submit the monetary amounts received in order to determine whether plaintiffs qualified for a loan modification. Id. Plaintiffs agreed to provide defendants with this information. Id. Defendants instructed plaintiffs to continue to make monthly payments of $1,542.92 until the modification had been completed. Id. Plaintiffs continued to make timely payments. Id. A few months later, defendants notified plaintiffs that the modification request had been denied because plaintiffs made too much income. Id., pp. 2-3. Plaintiffs continued to make timely payments of $1,542.92. Id., p. 3.

Defendants sold plaintiffs' mortgage to another unnamed defendant. Id. The new owner of the mortgage had no record of the agreement regarding making payments in the amount of $1,542.92. Id. The mortgage holder sent back the $1,542.92 payments and advised plaintiffs that the agreed upon monthly payment due

---

[2] The Court assumes that HAMP stands for the "Home Affordable Modification Program." See www.makinghomeaffordable.gov.

was $3,537.30. Id. Plaintiffs did not agree to make a payment that was more than double than that which they had been paying. Id.

Plaintiffs contacted defendants. Id. No one could validate the debt. Id. Plaintiffs were referred to several lenders. Id. According to plaintiffs, as of the date of the Amended Complaint, defendants have not validated the debt. Id.

Plaintiffs maintain that to validate a debt, the secured parties must have actual possession in the original "wet ink signed instruments (mortgage/promissory note) in order to perfect the security interest and validate that the debt exists." Id. The mortgage was sold, resold and transferred and yet no defendant has any history of the mortgage or documentation of the mortgage or note, and plaintiffs never received any response from defendants for their request of validation.[3] Id.

Plaintiffs' first cause of action seeks to enjoin the non-judicial sale and for cancellation of deed. Id., p. 8. Plaintiffs alleged that the sheriff's deed is invalid and has no effect for the reasons stated in paragraph 7 of the Amended Complaint.[4] Further, plaintiffs asserted that interests claimed by an unnamed defendant[5] under the sheriff's deed is a cloud on plaintiffs' titles to their property, resulting in injury to plaintiffs. Id.

Plaintiffs' second cause of action is entitled "Lack of Subject Matter Jurisdiction to Bring a Foreclosure Action and Sheriff's Sale." It alleged as follows: This is an action to

---

[3] The Amended Complaint also contained several pages of case law and statutes related to actions involving defendants in other jurisdictions and the criminal nature of mortgage foreclosure fraud. Id., pp. 4-8.

[4] There is no corresponding paragraph 7 that sets forth that reasoning.

[5] The Court notes that in the First and Second Causes of Action, plaintiffs only referenced allegations against an unnamed "defendant" as opposed to asserting the claims against all of the defendants.

set aside or vacate an alleged promissory note and mortgage. <u>Id.</u> p. 9, ¶ 1. Plaintiffs have made payments to defendant under the belief that defendant was the owner or holder of a promissory note that may have been signed by plaintiffs. <u>Id.</u>, ¶ 2. Plaintiff has requested authenticated copies of the purported note showing its existence and authenticated copies of the note bearing plaintiffs' signature, yet defendant has failed to produce them. <u>Id.</u>, ¶¶ 3, 4. Plaintiffs requested authenticated copies of the purported note establishing that the defendant is the owner of such a note, yet defendant has failed to produce any such records. <u>Id.</u>, ¶ 5. Defendant is not the owner or holder of the purported note and therefore, plaintiffs cannot be bound to make payments to defendant. <u>Id.</u>, ¶ 6. Plaintiffs are entitled to the release of the mortgage and return of all monies paid to defendant. <u>Id.</u>, ¶ 7. Defendant has failed to set forth a claim for which relief can be granted, including a breach of contract. <u>Id.</u>, ¶ 8. The complaint filed by defendant with the sheriff's department fraudulently failed to allege any loss or injury, or that money was even lent and lacked any direct evidence about the actual account ledger for the disputed account. <u>Id.</u>, ¶¶ 9, 10.

Defendant failed to comply with normal and accepted business practices, including the "Generally Accepted Accounting Principles," for assuring that the bookkeeping entries associated with the processing of all charge slips governed by the account agreement materially match the terms of the agreement and to ensure that the account holder's charge slips are not stolen or that their signatures are not forgeries. <u>Id.</u>, p. 10, ¶ 12. These bookkeeping entries, audit reports and other material financial statements must be personally inspected and verified in order to detect any material omissions. <u>Id.</u> While defendant may attempt to hold the purported agreement as an

open books agreement, based on defendant's acquiescence of the billed terms and conditions and plaintiffs' actions, no such agreement exists, given that sufficient time was not provided to plaintiffs to allow then to demonstrate an understanding of the agreement and a willingness to perform, and a couple of payments by plaintiffs. Id., ¶ 13.

Defendants have failed to show adequate consideration in the debt transaction. Id., ¶ 14.

Third party attorneys Kyle Seay and Ashley Rasmussen of "Potestivo & Associates, PC",[6] as debt collectors, violated the rights under 15 U.S.C § 1692g,[7] of a "Ms. Chase," who is not a party to this action. Id., pp. 10-11, ¶¶ 15, 16. Additionally, "attorneys" violated 15 U.S.C § 1692e[8] by making false and misleading misrepresentations in connection with the collection of alleged debt, and by demanding "a sum of money based on an undocumented and unverified claimed" that Chase owed to "Deutsche Bank National Trust Company,"[9] which sum was different from and greater than Chase could owe under any lawful theory. Id., ¶ 17.

---

[6]    Seay, Rasmussen and Potestivo & Associates are not named as defendants in this action.

[7]    15 U.S.C § 1692g sets forth the notice that is to be provided to a consumer in connection with the collection of a debt and the procedures to follow if a debt is disputed by a consumer.

[8]    15 U.S.C § 1692e generally provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

[9]    Deutsche Bank National Trust Company is not a defendant in this case.

Defendant violated Michigan Compiled Law for failing to prove the terms of the instrument, for returning a certified security wrongfully transferred, for allowing a person entitled to enforce an instrument to discharge an obligation to pay an instrument by an intentional voluntary act to cancel an instrument by a signed writing. Id., p. 11, ¶ 19.

Defendant failed to provide the original instrument and photocopies of the instrument are insufficient. Id., ¶ 20.

Plaintiffs also questioned whether a violation of fair debt collection practice occurred by the fact that an unidentified defendant increased their payments, given that plaintiffs did not see any provision that allowed for the increase in the contract.[10] Id., p. 12.

Plaintiffs alleged that defendants' refusal to proceed with the agreed upon reduced payments caused them to incur a negative credit rating, thereby hindering their ability to refinance the alleged mortgage. Id. Further, defendants ignored plaintiffs' request for debt validation, which resulted in defendants instituting a foreclosure action by falsely stating that plaintiffs breached the mortgage contact, when in fact, defendants breached the agreement. Id. In particular, plaintiffs alleged that there was a verbal agreement between the parties and plaintiffs complied with the terms of the agreement by making the necessary payments. Id., pp. 12-13.

Plaintiffs requested that the Court set aside the foreclosure, reinstate the mortgage at fair market value with a modified payment, and restore plaintiffs' credit. Id., p. 13.

---

[10] Plaintiffs set forth no statute or law that defendants may have violated based on these possible actions.

### C.    The Bank Defendants' Motion to Dismiss and Plaintiffs' Response

The Bank Defendants[11] argued that plaintiffs' contention that BONY cannot foreclose by advertisement unless it is both the record mortgagee and the holder to the promissory note—i.e. a "Show Me the Note" or "Produce the Note" theory—is based on the incorrect proposition that under Minnesota law only the holder of the "original wet-sink signature note" has the right to initiate a non-judicial foreclosure.    See Memorandum of Law of Bank Defendants in Support of Their Motion to Dismiss [Docket No. 11], pp. 7-9.

In addition, the Bank Defendants asserted that BONY had standing under Minnesota law to foreclose given that the mortgage at issue had been recorded and its assignment has also been recorded.  Id., p. 10.  The Bank Defendants also contended in their initial memorandum that plaintiffs improperly requested that the Court stay "lower court" proceedings until resolution, since the proper vehicle for plaintiffs to assert injunctive relief is through a separate motion and not through the Complaint.  Id., p. 11.

Finally, the Bank Defendants argued that Wilford & Geske is afforded immunity as foreclose legal counsel and that any claims under the Fair Debt Collection Practices Act ("FDCPA") fail to a state a claim for relief given that enforcing a security interest falls outside the ambit of the FDCPA.  Id., pp. 14-15.

In their supplemental memorandum in support of their motion to dismiss the Amended Complaint,[12] the Bank Defendants submitted that to the extent that plaintiffs

---

[11]    For the purposes of this Report and Recommendation, the "Bank Defendants" collectively refers to defendants Litton Loan Servicing, LP, Ocwen Loan Servicing, LLC, BONY, MERS and Wilford & Geske.

[12]    The Bank Defendants filed their first motion to dismiss following the service of the Complaint.  In light of plaintiffs' subsequent filing of the Amended Complaint, the Bank

are asserting a breach of contract claim based on their belief that the mortgage contract had been orally modified, such a claim is not viable under Minnesota's Statute of Frauds, Minn. Stat. §§ 513.04 and 513.05, because every contract for the sale of an interest in land must be in writing, and cannot succeed under Minnesota's Credit Agreement Statute of Frauds, Minn. Stat. § 513.33, which requires any alteration in a credit agreement to be in writing. See Bank Defs. Supp. Mem., pp. 5-7.

### D. Washington County Sheriff's Department's Motion to Dismiss

In conjunction with its initial motion to dismiss the Complaint, the Washington County Sheriff's Department ("Sheriff") argued that the Sheriff's Deed shows that plaintiffs' claims against it are moot because the Sheriff no longer has an interest in the title of the property at issue and is therefore, not properly named as a party to a quiet title action. See Memorandum of Law in Support of Defendant Washington County Sheriff Department's Motion to Dismiss for Failure to State a Claim [Docket No. 15], pp. 4-5.[13]  This is so because the Sheriff's Deed conveys title to the purchaser after the passage of the redemption period (in this case, six months after the July 1, 2011 sale), and consequently, when plaintiffs commenced their action, the Sheriff was no longer held the title to the property. Id.  In addition, the Sheriff contended that to the extent plaintiffs' requested relief relates to its duties in a mortgage foreclosure proceeding,

---

Defendants filed a supplement memorandum to address the limited scope of the additional allegations set forth in the Amended Complaint. See Supplemental Memorandum of Law of Bank Defendants in support of their Motion to Dismiss ("Bank Defs. Supp. Mem.") [Docket No. 31], p. 2.

[13]    While the Sheriff filed an Amended Motion to Dismiss [Docket No. 30] following plaintiffs' filing of the Amended Complaint, the Sheriff did not file another memorandum in support of its motion to dismiss the Amended Complaint.

relief cannot be granted as the Sheriff was statutorily obligated to conduct the foreclosure sale where it had received prima facie evidence that the legal perquisites of foreclosure had been met by Wilford & Geske (the attorney for the holder of the power to sell).  Id., pp. 5-7.

Plaintiffs filed one opposition to all defendants' initial motions to dismiss, which stated that the motions should be overruled because the Amended Complaint filed on the same day as their opposition, sufficiently stated a cause of action against all defendants.  See Plaintiffs [sic] Opposition to Defendants Motion to Dismiss [Docket No. 19], pp. 1-2.  Plaintiffs filed no written opposition to the defendants' amended motions to dismiss.

Plaintiff Lynn Cozad appeared at the hearing and asked for additional time to admit a retained attorney pro hoc vice, which was denied by the Court.[14]   Hearing Transcript [Docket No. 37], p. 10.  Cozad offered no substantive argument against defendants' motions to dismiss.  Id., pp. 10-11, 12.

## II.    STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in

---

[14]     In denying the request, the Court explained:

> Your motion is denied to adjourn these motions. This case has been pending since January 5th of 2012, at which time it was filed by you and Mr. Cozad pro se at that time. You have had, obviously, the opportunity prior to the filing of the Complaint to retain counsel, and you've had the opportunity to retain counsel throughout this case being pending here in this court. We are now at May 7th of 2012, and I am not going to grant your motion for an adjournment.

Hearing Transcript, p. 10.

the complaint must be taken as true.  <u>Ashley County, Ark. v. Pfizer, Inc.</u>, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, "the court must resolve any ambiguities concerning the sufficiency of the plaintiffs' claims in favor of the plaintiffs, and give the plaintiffs the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint."  <u>Ossman v. Diana Corp</u>., 825 F. Supp. 870, 880 (D. Minn. 1993) (internal quotation marks and citations omitted).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, (2007) and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading requirement does not require detailed factual allegations.  <u>Martin v. ReliaStar Life Ins. Co.</u>, 710 F. Supp. 2d 875, 886 (D. Minn. 2010) (citing <u>Twombly</u>, 550 U.S. at 555).  On the other hand, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>, 550 U.S. at 545.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Iqbal</u>, 556 U.S. at 677 (quoting <u>Twombly</u>, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Ritchie</u>

v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

In summary, the pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (internal quotation marks and citations omitted).

Although pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced. Stone v. Harry, 364 F. 3d 912, 914 (8th Cir. 2004). Courts will not construct legal theories for a pro se plaintiff. Id.

## III. ANALYSIS

### A. Claims Against the Bank Defendants

Much of plaintiffs' claims against the Bank Defendants center around the argument that the foreclosure of their property was improper because defendants failed to validate the debt, which according to plaintiffs, requires the secured parties to have actual possession of the original "wet ink" signed instruments to perfect the security interest and validate that the debt exists. Per plaintiffs, the mortgage was sold, resold and transferred; yet no defendant had any history of the mortgage or documentation of the mortgage or note.

The prerequisites for foreclosure by advertisement include: the requirement that "the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded; provided, that, if the mortgage is upon registered land, it

shall be sufficient if the mortgage and all assignments thereof have been duly registered." See Minn. Stat. § 580.02(3); see also Jackson v. Mortgage Electronic Registration Systems, Inc., 770 N.W.2d 487, 496 (Minn. 2009) ("[W]e have concluded that promissory note assignments do not have to be recorded under the plain language of the foreclosure by advertisement statutes."). Here, the mortgage for the property issued to MERS was recorded with the Washington County Recorder on October 30, 2006 as Document No. 3613464. See Kipp Aff., Ex. 2. The mortgage was subsequently assigned to BONY, which assignment was recorded with the Washington County Recorder on May 16, 2011 as Document No. 3841197. Id. at Ex. 3. Given that the mortgage and the assignment of the mortgage have been recorded with the Washington County Recorder, under Minnesota law BONY could proceed with a foreclosure by advertisement. Ultimately, a Sheriff's certificate of sale was issued on July 1, 2011 and plaintiffs alleged no relevant facts that would undermine the prima facie validity to which the sheriff's certificate of foreclosure sale is entitled under Minnesota law.[15] See Minn. Stat. § 580.19 (sheriff's certificate of sale is prima facie evidence of compliance with foreclosure sale requirements); Hamid v. JPMorgan Chase Bank, N.A., Civil No. 12-2009 (RHK/FLN), 2012 WL 5504886 at *1 (D. Minn. Nov. 13, 2012).

To the extent plaintiffs are relying on a theory that BONY was required to have ownership of or an interest in their promissory note to foreclose or that BONY was

---

[15]    While plaintiffs alleged that the complaint filed by defendant with the sheriff's department fraudulently failed to allege any loss or injury, or that money was even lent, the Notice of Mortgage Foreclosure, as part of the Sheriff's Certificate of Sale and Foreclosure Record, sets forth the initial principal mortgage amount of $360,000, that default had occurred, and the amount still owing was $439,487.41. See Kipp Aff., Ex. 6.

required to produce or have possession of the original promissory note before foreclosing, that theory has been rejected by every court in this jurisdiction to consider it. See, e.g., Stein v. Chase Home Fin., LLC, 662 F.3d 976, 980 (8th Cir. 2011) ("It is undisputed Chase was the mortgagee of record and held legal title to Stein's mortgage. Chase Bank assigned the mortgage to Chase on September 28, 2008. The assignment was duly recorded in the Hennepin County Recorder's Office. Thus, Chase was the party entitled to commence a foreclosure by advertisement under Minnesota law, even if the promissory note (and the corresponding equitable interest in the mortgage) had been transferred to someone else."); Mustafa v. Bank of America, N.A., Civ. No. 12-590 (DWF/TNL), 2012 WL 3612083 at *2 (D. Minn. Aug. 21, 2012) (gathering cases from the District of Minnesota rejecting the theory that a mortgagee with legal title to property must also possess or have an interest in the promissory note to foreclose by advertisement); Peterson v. CitiMortgage, Inc., Civ. No. 11-2385 (SRN/JJG), 2012 WL 1971138 at *2 (D. Minn. June 1, 2012) (dismissing complaint and noting that "the essence of the Complaint is Plaintiff's claim that Defendants do not have valid title to the original notes for their mortgages and therefore cannot legally foreclose on their mortgages. Plaintiffs' theory has been rejected by every court to consider it, including both the Eighth Circuit . . . and the Minnesota Supreme Court . . . every judge in this District to have ruled on the merits of these cases has dismissed them."); Pope v. Wells Fargo Bank, N.A., Civ. No. 11-2496 (SRN/FLN), 2012 WL 1886493 at *2 (D. Minn. May 23, 2012) ("At bottom, Plaintiffs' claim is that Defendants do not have valid title to the original notes for their mortgages and therefore cannot legally foreclose on their mortgages. Plaintiffs' theory has been rejected by every court to consider it, including

the Minnesota Supreme Court."); <u>Olson v. Bank of America, N.A.</u>, Civ. No. 11-3710 (PAM/FLN), 2012 WL 1660615 at *3 (D. Minn. April 19, 2012) ("[P]laintiffs' argument is that Defendants do not own the notes for Plaintiffs' mortgages and thus cannot foreclose on those mortgages. But as Judge Schiltz has so thoroughly discussed in <u>Welk</u>, this argument has no merit whatsoever.") (citation omitted); <u>Larsen v. Bank of Amer., N.A.</u>, Civ. No. 11-1775 (MJD/JSM), 2011 WL 6065426 at *8 ("[a] mortgagee does not need to have an interest in a promissory note to foreclosure on a mortgage).

Therefore, to the extent that any of plaintiffs' causes of action depend on a theory that BONY could not foreclose because it did not possess or have an interest in the promissory note, those claims must be dismissed as meritless.

The Court also concludes that plaintiffs' breach of contract claim against the Bank Defendants fails to state a claim for relief. Pursuant to Minn. Stat. § 513.33, subd. 1, "credit agreement" is defined as "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Under Subdivision 2, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn. Stat. § 513.33, subd. 2. In addition, Subdivision 3(a), states:

> The following actions do not give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements:
>
> (1) the rendering of financial advice by a creditor to a debtor;
>
> (2) the consultation by a creditor with a debtor; or
>
> (3) the agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from

> exercising remedies under prior credit agreements, or
> extending installments due under prior credit agreements.

Minn. Stat. § 513.33, subd. 3(a). Further, "[a] credit agreement may not be implied from the relationship, fiduciary or otherwise, of the creditor and the debtor." Minn. Stat. § 513.33, subd. 3(b). Moreover, under Minn. Stat. § 513.04 the conveyance of any interest in land must be in writing.

"[U]nder Minnesota law, a loan modification constitutes a credit agreement, and Minnesota's Statute of Frauds and Credit Agreement Statute bars the enforcement of 'credit agreements' that are not in writing and signed by both the creditor and debtor." Armstrong v. Ocwen Loan Servicing, LLC, Civil No. 12–146 (DWF/LIB), 2012 WL 4009448, at *3 (D. Minn. Sept. 12, 2012) (citing Minn. Stat. § 513.33, subd. 2; Myrlie v. Countrywide Bank, 775 F. Supp.2d 1100, 1108-09 (D. Minn. 2011); Grueling v. Wells Fargo Home Mortg., Inc., 690 N.W.2d 757, 761-62 (Minn. Ct. App. 2005)).

In this case, the Amended Complaint does not allege that the parties entered into a written agreement to modify the mortgage. To the contrary, the allegations focus on a failed attempt to modify the mortgage and a breach of a verbal agreement by defendants. See Amended Complaint, p. 13. As such, the Bank Defendants' motion to dismiss any breach of contract claim should be granted and the claim should be dismissed with prejudice, as any purported modification was made verbally and not in writing as required by Minn. Stat. § 513.33.[16]

---

[16] To the extent plaintiffs are asserting that defendants failed to comply with normal and accepted business practices, including the Generally Accepted Accounting Principles, even if true, such a claim does not in of itself state cause of action for which relief can be granted. Moreover, this Court does not comprehend how Michigan law (referenced in the Second Cause of Action in the Amended Complaint), has any bearing on a mortgage foreclosure that occurred in Minnesota. Further, while plaintiffs assert

As for plaintiffs reference to the FDCPA in their Amended Complaint, to the extent that plaintiffs are complaining about any action of Bank Defendants in connection with their default, none of the Bank Defendants, including BONY(as a creditor), or its attorneys initiating the foreclosure (Wilford & Geske), are subject to the FDCPA. See 15 U.S.C. § 1692a(4), (6) (distinguishing "debt collector" from "creditor"; Lansing v. Wells Fargo Bank, N.A., Civ. No. 11-3132 (DSD/AJB), 2011 WL 6754083 at *1-2 (D. Minn. Dec. 23, 2011) (noting that "a distinction between creditors and debt collectors is fundamental to the FDCPA, which does not regulate creditors' activities at all," and rejecting plaintiff's argument that Wells Fargo, which initiated non-judicial foreclosure proceedings against plaintiff's property, was a "debt collector" within the meaning of the FDCPA) (internal citation and quotation omitted).

For all of these reasons, the Bank Defendants' motion to dismiss should be granted.

### B.  Washington County Sheriff Department's Motion to Dismiss

Plaintiffs failed to allege the basis of this Court's jurisdiction over the Washington Sheriff's County Department.  Presumably, because the Department's only involvement

---

that there was a lack of consideration in the debt transaction between the parties, plaintiffs did allege that they refinanced their home with one of defendants on or about November 2006 at an interest rate of 8.36% for a period of twenty-four months and that the balance of the loan was $360,000, with a monthly payment of $2,735.45.  See Amended Complaint, pp. 1-2.  In other words, plaintiffs received a substantial amount of money in return for a promise to pay back the debt with interest and the protections provided by the mortgage.  See Kipp Aff., Exs. 1, 2.  This is sufficient consideration.

in this case is related to the foreclosure proceeding and its propriety under state law, whatever plaintiffs' claims are against it, these claims must arise under state law.[17]

In light of this Court's recommendation that all of plaintiffs' claims against the Bank Defendants be dismissed, the Court no longer has original jurisdiction over plaintiffs' claims.  In this situation, the Court should decline to exercise supplemental jurisdiction over plaintiffs' state law claims, whatever they may be, against the Washington County Sheriff's Department.  See 28 U.S.C. § 1367(c)(3) (the district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction); Johnson v. City of Shorewood, 360 F.3d 810, 819 (8th Cir. 2004) ("The Supreme Court has noted that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine  . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (internal quotation and citation omitted).    On this basis, the Court recommends that any claims against the Washington County Sheriff's Department be dismissed without prejudice.

## IV.    RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT:

1.    Defendants Litton Loan Servicing, LP, Ocwen Loan Servicing, LLC, The Bank of New York Mellon f/k/a The Bank of New York, as Trustee, Mortgage Electronic Registration Systems, Inc. and Wilford, Geske & Cook, P.A.'s Motion to Dismiss [Docket No. 21] be **GRANTED**.  Plaintiffs' claims should be **DISMISSED WITH PREJUDICE**.

---

[17]    This Court notes that plaintiffs have not alleged any facts that would show that the Washington Sheriff's County Department deviated from the statutory procedures or otherwise acted improperly or negligently.  In any event, this Court believes that the state courts are in the best position to determine any possible liability, pursuant to Minnesota law, a county sheriff may incur as part of a foreclosure sale.

2.     Defendant Washington County Sheriff Department's Amended Motion to Dismiss [Docket No. 30] be **GRANTED**.  The suit against the Washington County Sheriff Department should be **DISMISSED WITHOUT PREJUDICE**.


Dated: December 12, 2012               s/ *Janie S. Mayeron*
                                       JANIE S. MAYERON
                                       United State Magistrate Judge


## NOTICE

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **December 26, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **December 25, 2012**.